IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Civil Action No. 2:20-cv-76

| | |
|---|---|
| MONA GILLIAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | COMPLAINT |
| v. ) | |
| ) | |
| BERTIE COUNTY BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
| Defendant. ) | |

NOW COMES Plaintiff, Mona Gilliam, by and through the undersigned counsel of record, complaining of Defendant, Bertie County Board of Education, hereby alleges and says:

## **NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and the Age Discrimination Act of 1967 which prohibit discrimination on the basis of race, color, sex, age, and retaliation, and N.C. Gen. Stat. § 126-7.1 which requires State employees who have been separated due to reduction in force receive priority consideration for other positions and salary rights. Plaintiff, Mona Gilliam, (hereinafter "Plaintiff"), brings this action to remedy discriminatory employment practices of her former employer, Bertie County Public Schools (hereinafter "Defendant" or "Bertie County"). Defendant took adverse action against Plaintiff's employment based on her race, color, sex, and age, and retaliated against her by separating her through the reduction in force process and failing to provide her priority required under N.C. Gen. Stat. § 126-7.1. This Complaint sets out in detail the relevant instances of unlawful discrimination by Defendant.

## PARTIES

1. Plaintiff, a United States Citizen, was employed by Defendant as a Director of Student Services at Defendant's central office in Windsor, North Carolina.

2. At all times relevant herein, Plaintiff was a citizen and resident of North Carolina.

3. At all times relevant herein, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

4. At all times relevant herein, Defendant was an employer of Plaintiff within the meaning of 42 U.S.C. § 12111(5).

5. At all times relevant herein, Defendant Bertie County Board of Education, is a county board of education duly established by the General Statutes of North Carolina. The Board is charged with the responsibility of providing and maintaining the Public School System within Bertie County in accordance with Chapter 115C of North Carolina General Statutes.

6. Defendant is subject to the jurisdiction of this court as they are incorporated and their principal place of business is in North Carolina.

## FACTUAL ALLEGATIONS

7. During the time period at issue, Plaintiff was a 47-year old (DOB: July 1, 1972) black female with over 10 years of administrative experience and 16 years of teaching experience.

8. Plaintiff began her employment with Defendant in 2013 as the Principal of Windsor Elementary School.

9. On April 17, 2015 Plaintiff received a written reprimand related to an internal audit of Windsor Elementary School conducted on February 4, 2015. A similarly situated white principal was not provided a written reprimand for a similar incident related to an internal audit.

10. In June 2015, Plaintiff accepted employment as a School Administrator for Defendant.

2

11. On April 16, 2016, Plaintiff was transferred to the position of Student Services Director at Defendant's central office.

12. In the Spring of 2017, Defendant implemented a Reduction in Force ("RIF") plan which would eliminate 28.5 positions, or 6.16% of total staff, which included two positions in School/Central Office-Based Administration/Licensed Instructional Support. Considerations for reduction in force included: work performance and evaluation ratings; areas of licensure; highly qualified status; program enrollment; service in extra duty positions and ability to fill such positions; length of service, with higher priority given to service in this school system; and degree level. (See attached Exhibit 1 - 2017-2018 Fiscal Year RIF Plan).

13. On April 26, 2017, Plaintiff received a separation of employment notice dated April 13, 2017, that her position would be eliminated as part of Defendant's RIF plan. (See Exhibit 2 - Separation Notice).

14. On May 12, 2017, Plaintiff had an individual RIF meeting with Steven Hill, Superintendent, and Ella Field-Bunch, Chief Human Resources and Public Information Officer, during which they failed to provide Plaintiff her individual rubric as to how they made their decision for reduction. (Exhibit 3 - May 12, 2017 Email from Plaintiff).

15. On May 18, 2017, Plaintiff requested access to her personal file.

16. On June 6, 2017, Plaintiff had a hearing in front of the Board of Education regarding her separation.

17. On June 9, 2017, Plaintiff received a letter from Defendant indicating that instead of making a final decision, the Board asked Superintendent Hill to determine whether there is a vacant position for which Plaintiff was qualified and could be transferred into for the 2017-18 school year. (See attached Exhibit 4 - June 9, 2017 Letter).

18. On June 22, 2017, Superintendent Hill offered Plaintiff a social studies teacher position.

19. On June 28, 2017, Plaintiff provided a letter to the Board and Superintendent Hill indicating her concerns about only being offered a teaching position instead of a position that was comparable to her qualifications, skill sets, and current position. (See attached Exhibit 5 - June 28, 2017 Letter).

20. On July 10, 2017, Plaintiff provided Defendant's Interim Executive Director of Operations Karen Dameron an interest letter for the Human Resources Director and Principal position that was vacant in the district. (See attached Exhibit 6 - July 10, 2017 Letter).

21. On November 27, 2017, Plaintiff requested a copy of the audio-recording of her appeal hearing heard by the board on June 6, 2017.

22. On November 27, 2017, Plaintiff received only a portion of the audio file from the June 6, 2017 hearing.

23. On February 13, 2018, Stephanie Horton (white, younger female) was recommended for an administrative position as a grade 6-12 Curriculum Director. Horton's employment was later approved by the Board. (See Attached Exhibit 7 - February 13, 2018 Superintendent's Personnel Report for Approval).

24. On April 17, 2018, Linda Bullock (biracial, older female) was recommended for an administrative position as Director of Curriculum and Instruction. Bullock's employment was later approved by the Board. (See Attached Exhibit 8 - April 17, 2018 Superintendent's Personnel Report for Approval).

25. On June 20, 2018, Plaintiff requested access to her personnel file from HR Specialist Tekeita Thompson. The file was intercepted by Karen Dameron. When received, the content of the

4

personnel file was different from when reviewed by Plaintiff in May 2017, as the 2015 written reprimand was missing.

26. During the summer of 2018, Plaintiff was not allotted the same privileges as other teachers as she was required to work 12-hour days during the summer, while other teachers did not have the same hour requirements.

27. Following the 2017-2018 fiscal year, other administrators' positions that had been lost during the RIF were restored while Plaintiff was not offered the same opportunities.

28. Since being demoted to a teaching position, the central office brought in Danny Perry (white, younger male) as a student services/safety administrator. This is the same position that Plaintiff was separated from under a slightly different title.

29. The central office also brought in Glen Buck (white male) as a human resources director, a position that Plaintiff expressed interest in by letter in July 2017.

30. On July 10, 2018, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC).

31. On August 27, 2020, Plaintiff received the EEOC Right to Sue Letter. (See Attached Exhibit 9 - EEOC Right to Sue).

## **FIRST CAUSE OF ACTION**
(Age Discrimination)

32. The allegations set forth in paragraphs one through thirty-one are realleged and incorporated by reference as if fully set forth herein.

33. "In order to make out a *prima facie* case under the [Age Discrimination in Employment Act of 1967] ADEA, the Plaintiff must show that [s]he (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting [her] employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably

5

than someone outside the protected class or someone 'substantially younger.'" *Sullivan v. Perdue Farms, Inc.,* 133 F. Supp. 3d 828, 837 (2015) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

34. Plaintiff was in the age group protected by the ADEA as she was over the age of 40 at the time the discrimination took place.

35. Defendant took adverse employment action against Plaintiff as they terminated her administration position and demoted her to a teaching position. Additionally, they failed to promote her back into an administrative position when positions became available in the central office.

36. Plaintiff was meeting her employer's expectations at the time of the adverse action, as she was not separated due to performance issues. Her proposed separation was allegedly based on a RIF plan, which did not relate to Plaintiff's performance in her administrative role.

37. Plaintiff was separated from her position in the central office, and Defendant has since retitled the position and hired Danny Perry, a younger individual.

38. Plaintiff was not provided opportunities to return to the administrative office in 2018 following the Reduction in Force plan, while Stephanie Horton (younger) was brought in from out of district to fill an administrative position.

## **SECOND CLAIM OF ACTION**
(Race and Color discrimination)

39. The allegations set forth in paragraph one through thirty-eight are realleged and incorporated by reference as if fully set forth herein.

40. To establish a *prima facie* case of race and color discrimination, a Plaintiff must show: "(i) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected;

6

and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. 782, 802(1973).

41. Plaintiff is an African American, dark complexioned individual.

42. Plaintiff was wrongfully chosen as one of the individuals who would be separated as a part of the Defendant's 2017-2018 RIF plan. Linda Justus, a white individual, should have been separated instead based on the criteria laid out by Defendant. Additionally, many individuals were not evaluated similarly to Plaintiff, as they did not receive evaluations the year prior, and therefore, were not considered in the RIF process.

43. Plaintiff was demoted from her position in administration, and the position was later retitled and filled by Danny Perry, a white individual, with less experience in administration than Plaintiff.

44. Plaintiff also expressed interest in a Human Resources position with Defendant following separation from her administrative position, of which she was qualified to hold. However, Plaintiff was not interviewed and did not receive the human resources position. Instead, Defendant filled the human resources position with Glen Buck, a white individual.

45. Under N.C. Gen. Stat. § 126-7.1, Plaintiff should have been given priority for administrative positions, however, Defendant instead hired Stephanie Horton (white) and Linda Bullock (bi-racial) to fill administrative positions within Plaintiff's district.

**THIRD CLAIM OF ACTION**
(Sex discrimination)

46. The allegations set forth in paragraphs one through forty-five are realleged and incorporated by reference as if fully set forth herein.

47. To establish a prima facie case of sex discrimination, Plaintiff must "prove by a preponderance of the evidence that she applied for an available position for which she was qualified but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981).

48. Plaintiff was demoted from her position in administration. Although the RIF plan indicated that the position would no longer exist, the position was retitled and filled by Danny Perry (male) in 2018.

49. Plaintiff also expressed interest in a Human Resources position with Defendant following separation from her administrative position, for which she was qualified to hold. However, Plaintiff was not interviewed and did not receive the human resources position. Instead, Defendant filled the human resources position with Glen Buck (male).

50. Both male individuals identified above had less years of experience and were brought in from other districts than Plaintiff's who would have been an internal hire.

## **SECOND CLAIM OF ACTION**
(Retaliation)

51. The allegations set forth in paragraphs one through fifty are realleged and incorporated by reference as if fully set forth herein.

52. "To establish a *prima facie* claim of retaliation, a plaintiff must show: (1) that [s]he engaged in protected activity, (2) that the employer took a materially adverse action against [her] and (3) there is a causal connection between the protected activity and the adverse action. *Perkins v. International Paper Company,* 936 F.3d 196, 213 (4th Cir. 2019).

53. To prove that she engaged in protected activity under Title VII, a plaintiff "must only show that [s]he reasonably believed that the complained of conduct was unlawful." *Nathan v. Takeda Pharmaceuticals America, Inc.,* 890 F. Supp. 2d 629, 644 (2012)(*citing E.E.O.C. v. Navy*

*Federal Credit Union,* 424 F.3d 397, 406 (2005)(explaining that Title VII "protected activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonable believes to be unlawful."))

54. Plaintiff engaged in protected activity when she provided a letter to Kim Cooper on August 28, 2017, regarding her issues with her potential separation. Plaintiff continued to engage in protected activity throughout the appeal process relating to the RIF plan.

55. Defendant took a materially adverse action against Plaintiff when they did not provide Plaintiff a comparable position within the district as they only offered her a teaching position. This adverse action progressed as Plaintiff was not offered administrative positions that became available during the 2017-2018 school year. Instead, Defendant specifically hired employees from out of district for the available administrative positions, even after Plaintiff expressed interest in open positions. Additionally, Defendant took materially adverse action against Plaintiff when they required her to work over the summer of 2018, while other employees were not required to do so.

56. There is a causal connection between the protected activity and the adverse action as the adverse actions immediately followed Plaintiff's appeal of her proposed separation.

**THIRD CLAIM OF ACTION**
(N.C. Gen. Stat. § 126-7.1)

57. The allegations set forth in paragraphs one through fifty-six are realleged and incorporated by reference as if fully set forth herein.

58. Under N.C. Gen. Stat. § 126-7.1(f), "[i]f a State employee who has been separated due to reduction in force or has been given notice of imminent separation due to reduction in force: (1) applies for another position of State employment equal to or lower in salary grade than the position held by the employee at the time of notification or separation; and (2) has substantially

9

Case 2:20-cv-00076-M   Document 1   Filed 11/18/20   Page 9 of 11

equal qualifications as any other applicant . . . shall receive priority consideration over all other applicants."

59. Plaintiff was entitled to priority pursuant to N.C. Gen. Stat. § 126-7.1(f), as Plaintiff was given notice of imminent separation due to reduction in force on April 26, 2017, expressed interest for another equal position of employment with the State, yet was not considered for this position.

60. Additionally, while Plaintiff's administration position was eliminated due to the RIF plan for 2017-2018, two individuals were brought in from other districts for administrative positions that Plaintiff was not offered or considered for.

61. Many of the individuals who had been eliminated during the RIF plan have been reinstated into administrative positions while Plaintiff has not been offered the same opportunities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

A. Order Defendant to make Plaintiff whole by providing appropriate monetary relief in the amount of $100,000;

B. Order Defendant to expunge Plaintiff's employment record as necessary to eradicate the effects of Defendant's discriminatory practices.

C. Order Defendant to make Plaintiff whole by providing compensation for pecuniary losses resulting from the unlawful employment practices described in herein;

D. Grant such relief as the Court deems necessary and proper in the public interest; and

E. Award Plaintiff's its attorney's fees and costs of this action pursuant to Title VII of the Civil Rights Act of 1964.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of facts raised by this Complaint.

Respectfully submitted this, the 18th of November, 2020.

/s/Benjamin Tyler McLawhorn
Benjamin Tyler McLawhorn
McLawhorn & Russell, PLLC
N.C. State Bar No. 53821
8801 Fast Park Drive, Suite 307
Raleigh, North Carolina 27617
Telephone: 919-364-8975
Fax: 919-646-4032
ben@mclawfirmnc.com
*Attorneys for Plaintiff*