IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

Case No. 2:20-cv-00076-M

MONA GILLIAM,                )
                            )
    Plaintiff,              )
                            )
v.                          )                    ORDER
                            )
BERTIE COUNTY BOARD OF      )
EDUCATION,                  )
                            )
    Defendant.              )

This matter is before the court on Defendant's Motion to Dismiss Plaintiff's Complaint

pursuant to Fed. R. Civ. P. 12(b)(2), (b)(4), (b)(5), and (b)(6). [DE 10]. Defendant contends that

service was improper and that Plaintiff fails to state plausible claims for race, color, and sex

discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), age discrimination

under the Age Discrimination in Employment Act of 1967 ("ADEA"), retaliation under both Title

VII and the ADEA, and denial of priority consideration under N.C.G.S. § 126-7.1(f), which are all

set forth in Plaintiff's Complaint. [DE 1]. Plaintiff counters that service was proper, and if not,

any defect was cured. Plaintiff also argues that her allegations, taken as true, are sufficient to state

a plausible claim against the Defendant. For the reasons that follow, Defendant's motion is granted

in part and denied in part.

## I.  Background

### A.  Plaintiff's Factual Allegations

The following are factual allegations (as opposed to statements of bare legal conclusions,

unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative

Complaint [DE 1], which the court must accept as true at this stage of the proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff Mona Gilliam is a 47-year-old black female employed by the Defendant Bertie County Board of Education (the "Board"). Compl. at ¶ 7. She has over ten years of administrative experience and sixteen years of teaching experience. *Id.* Ms. Gilliam began her employment with the Board in 2013 as the Principal of Windsor Elementary School. *Id.* at ¶ 8. On April 17, 2015, Ms. Gilliam received a written reprimand related to an internal audit of Windsor Elementary School. *Id.* at ¶ 9. In June 2015, the Board hired Ms. Gilliam as a School Administrator. *Id.* at ¶ 10. On April 16, 2016, she was transferred to Student Services Director. *Id.* at ¶ 11.

Then, in the spring 2017, the Board initiated a Reduction in Force ("RIF") plan due to financial exigency. *Id.* at ¶ 12 (Exhibit 1). The Board considered a list of factors in determining which staff would be subject to the reduction, including work performance and evaluation ratings; areas of licensure; highly qualified status; program enrollment; service in extra duty positions and ability to fill such positions; length of service, with higher priority given to service in the Bertie County school system; and degree level. *Id.* at ¶ 12 (Exhibit 1). On April 26, 2017, Ms. Gilliam received a separation of employment notice alerting her that her position was being eliminated by the RIF plan. *Id.* at ¶ 13.

Ms. Gilliam challenged this decision. First, she met with Superintendent Steven Hill and Chief Human Resources and Public Information Officer Ella Field-Bunch and requested her individual rubric reflecting why her position was being eliminated, but her request was refused. *Id.* at ¶ 14 (Exhibit 3). She then requested a hearing before the Board of Education, which was

2

held on June 6, 2017. *Id.* at ¶ 16.[1] On June 9, 2017, the Board sent Ms. Gilliam a letter explaining it had not reached a final decision on her employment and, instead, asked the Superintendent to determine whether another position existed for Ms. Gilliam in the school system for the 2017–18 school year. *Id.* at ¶ 17 (Exhibit 4). On June 22, 2017, the Board offered Ms. Gilliam a social studies teacher position. *Id.* at ¶ 18.

Ms. Gilliam was unsatisfied with this position. She wrote the Board and Superintendent expressing her concern that she was not offered "a position that was comparable to her qualifications, skill sets, and current position." *Id.* at ¶ 19 (Exhibit 5). She also sent an interest letter, dated July 10, 2017, to Karen Dameron, the Board's Interim Executive Director of Operations, for a vacant Human Resources Director and Principal position. *Id.* at ¶ 20 (Exhibit 6). The letter detailed her experience, education, and qualifications for the position and requested an interview. *Id.*

Ms. Gilliam was not hired for that position or for several other administrative positions. First, on February 13, 2018, Stephanie Horton, a white female younger than Ms. Gilliam, was hired as a grade 6–12 Curriculum Director. *Id.* at ¶ 23. Second, on April 17, 2018, Linda Bullock, a biracial female older than Ms. Gilliam, was hired as Director of Curriculum and Instruction. *Id.* at ¶ 24. Third, Danny Perry, a white male younger than Ms. Gilliam, was hired as a Student Services/Safety Administrator, the same position from which Ms. Gilliam was separated under a slightly different title. *Id.* at ¶ 28. And fourth, Glen Buck, a white male, was hired for the human resources director position in which Ms. Gilliam had expressed interest. *Id.* at ¶ 29. Moreover,

---

[1] Five months later, on November 27, 2017, Ms. Gilliam requested a copy of the audio-recording of her June 6, 2017 hearing. She received only a portion of that audio file. Compl at ¶¶ 21–22.

during the summer 2018, Ms. Gilliam was required to work twelve-hour days [sic],[2] even though other teachers were not required to do so. *Id.* at ¶ 26. After the 2017–2018 fiscal year, other administrative positions lost during the RIF were restored, but Ms. Gilliam was not restored to her position. *Id.* at ¶ 27.

On June 20, 2018, Ms. Gilliam requested access to her personnel file from HR Specialist Tekeita Thompson. She had previously requested and was granted access to her file on May 18, 2017. *Id.* at ¶ 15. Ms. Gilliam alleges Karen Dameron intercepted the file because when she received the file in 2018, she noticed the 2015 written reprimand was missing. *Id.* at ¶ 25.

B.    Procedural History

On July 10, 2018, Ms. Gilliam filed a Charge of Discrimination against the Board with the Equal Employment Opportunity Commission ("EEOC"). Her charge alleged race, color, sex, and age discrimination, as well as retaliation and a violation of N.C. Gen. Stat. § 126-7.1. Def.'s Mot. to Dismiss at Exhibit 1. On August 27, 2020, Plaintiff received her EEOC Right to Sue Letter. Compl. at ¶ 31.

Ms. Gilliam initiated this action on November 18, 2020. [DE 1]. In lieu of an Answer, the Board filed the present motion on January 14, 2021, seeking dismissal for Ms. Gilliam's purported improper service of process and failure to allege plausible claims for relief. [DE 10]. Ms. Gilliam counters that her allegations, taken as true, plausibly assert her claims and that the Board's motion

---

[2] The court recognizes this allegation that Ms. Gilliam was working "12-hour days," Compl. at ¶ 26, is a typographical error and was intended to allege a twelve-month schedule. *See* Def.'s Mot. to Dismiss at Exhibit 1 (EEOC charge) ("Most recently this summer even though I am now classified as a teacher my employer has not allowed me to have summer break as other teachers and is making me work during the summer months and I am doing various random duties that are assigned to me as they become available and I have been told that I must work a full 12 months unlike other teachers.").

4

should be rejected. The Board replies that Ms. Gilliam failed to allege the facts necessary to state claims for relief and her complaint therefore should be dismissed.

## II.    Analysis

### A.  Service of Process

The Board argues that Ms. Gilliam has failed to effect proper service of process, depriving this court of personal jurisdiction, and thus her complaint should be dismissed under Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure. Def.'s Mot to Dismiss at 1–2. Although Ms. Gilliam made technical errors in her service of process, those errors have been cured by actual notice and substantial compliance.

This court cannot exercise jurisdiction without valid service of process. "A plaintiff has the burden to show that she effected service of process properly and that the court has personal jurisdiction over all defendants." *Saimplice v. Ocwen Loan Servicing Inc.*, 368 F. Supp. 3d 858, 865 (E.D.N.C. 2019). Service of process is the issuance of a summons and complaint to each defendant. Fed. R. Civ. P. 4(a), (b), (c). This court must dismiss a complaint without prejudice if a plaintiff fails to properly serve all defendants, unless the plaintiff can show good cause for the failure to properly serve. Fed. R. Civ. P. 4(m). But a defect in service can be cured by actual notice if the defect is a mere technicality and there is substantial compliance. *See Scott v. Maryland State Dep't of Labor*, 673 F. App'x 299, 305–06 (4th Cir. 2016).

The purpose of service of process is actual notice. *See id.* at 304. When a defendant receives actual notice, the technical requirements of Rule 4 should be "construed liberally." *See Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003). "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting

5

service of process may not be ignored." *Elkins*, 213 F.R.D. at 275 (quoting *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). Although actual notice provides for a liberal construction, "substantial compliance" with the rules is still required to cure any technical defect in service. *Scott*, 673 F. App'x at 305–06 (explaining the liberal construction afforded the rules by actual notice will overcome minor technical defects but Rule 4 still "must be accorded at least substantial compliance") (internal citations and quotation marks omitted).

Serving a local school board is governed by Rule 4(j) of the Federal Rules of Civil Procedure. Rule 4(j)(2) states that a school board "must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Ms. Gilliam served the Board pursuant to Rule 4(j)(5)(c)(iii) of the North Carolina Rules of Civil Procedure. This rule directs that process can be served on a county or city board of education "by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director, agent, or attorney-in-fact as specified" by the rules to receive service. N.C. Gen. Stat. § 1A-1, N.C. R. Civ. P. 4(j)(5)(c)(iii). North Carolina's "appellate courts have explicitly recognized liberality as the canon of construction when interpreting the North Carolina Rules of Civil Procedure." *Washington v. Cline*, 233 N.C. App. 412, 420, 761 S.E.2d 650, 655–656 (2014).

Despite the Board's contention that Ms. Gilliam failed to properly serve the Board, any defect in Ms. Gilliam's service was cured. The Board received actual notice, alleges no hardship caused by any defects, the alleged defects in Ms. Gilliam's service were merely technical, and she substantially complied with Rule 4 by mailing a copy of the summons and of the Complaint by certified mail, return receipt requested, addressed to the Board's "chief operating officer," which

6

is its superintendent. Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 4; *see also* N.C. R. Civ. P. 4(j)(5)(c)(iii) (stating service may be effectuated "by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director, agent, or attorney-in-fact").

The Board identifies two alleged defects in service. First, the Board notes that Plaintiff misnamed the Superintendent as "John Smith," but the acting Superintendent of Bertie County Schools is Dr. Otis Smallwood. Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 5–6. Moreover, the Board argues service was improper because the return receipt was not signed by the recipient. *Id.* at 6. The envelope containing the Summons and Complaint was left in the Bertie County Schools central office mailbox, return receipt removed. *Id.* The Board argues the incorrect naming of the Board's officer and lack of a return receipt signed by the Board's representative invalidate the service.

Any technical defects in Ms. Gilliam's service of process, however, are cured. The Board received actual notice, contacting Ms. Gilliam's counsel shortly after receipt of the Complaint to request an extension of time. [DE-7]; Pl.'s Resp. at 5. The Board does not argue that Ms. Gilliam's service "engender[ed] the kind of confusion" that would "leav[e] them without clear notice of the necessity to respond." *Armco*, 733 F.2d at 1089. Indeed, the Board did respond. Further, liberally construing the technical requirements of Rule 4 in light of actual notice, Ms. Gilliam's misnaming of the Board's superintendent is a technical violation that does not invalidate service of process, *Shaver v. Cooleemee Volunteer Fire Dep't*, No. 1:07-CV-00175, 2008 WL 942560, at *1 (M.D.N.C. Apr. 7, 2008) ("[A] mistake in a party's name in a summons is not always a fatal error. . . . "[w]here the 'misdescription does not leave in doubt the identity of the party to be sued'" the defect can be cured or corrected). Service also is not invalidated by any technical violation in the

7

return receipt, if one exists. Ms. Gilliam properly addressed service of process and identified the correct officer to serve, the Board's superintendent. *See Scott*, 673 F. App'x at 306 (explaining improper address is a "substantial defect"). Given the circumstances of the Covid-19 pandemic, especially in November 2020, the Post Office's change in policy to signing return receipts with initials and "covid19" does not invalidate service of process here. [DE-5, Aff. of Service]. The Board received actual notice and responded timely, without noting any burden or confusion caused by the technical defects in Ms. Gilliam's service. Given the deficiencies in Ms. Gilliam's service were mere technicalities and the Board received actual notice of the suit against it, the defects in Ms. Gilliam's service of process are cured.

Defendant argues that the stricter North Carolina rules should apply. Def.'s Mem. at 5–6. However, applying the canon of liberality that North Carolina courts apply to their rules of civil procedure, Ms. Gilliam has properly served the Board without defect. She "mail[ed] a copy of the summons and of the complaint [by] registered or certified mail, return receipt requested, addressed to the officer, director, agent, or attorney-in-fact" designated to receive service for the Board. N.C. R. Civ. P. 4(j)(5)(c)(iii). The alleged "defects" are that the name of the superintendent was incorrect and the return receipt was missing. First, the service was correctly addressed to the correct officer, the superintendent, and a misnaming is not a fatal defect if there is no doubt about the entity being sued. *Shaver*, 2008 WL 942560, at *1. Second, the return receipt was signed according to the procedures of the U.S. Postal Service for certified mail at the time of delivery. [DE-5]. A liberal construction of the rules renders Ms. Gilliam's service proper, *see Washington*, 233 N.C. App. at 420, 761 S.E.2d at 655–656 (interpreting North Carolina rules of civil procedure liberally), but even if service was defective here, those defects are mere technicalities cured by actual notice and substantial compliance.

8

B. <u>Failure to State a Claim</u>

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the

9

complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

*Twombly*'s plausibility standard applies to claims under Title VII and the ADEA as well. Therefore, a plaintiff need not plead a prima facie case for discrimination to survive a motion to dismiss, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–515 (2002), but a plaintiff still must "allege facts to satisfy the elements of a cause of action created by [the relevant] statute," *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (quoting *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)). The prima facie elements of discrimination are helpful, but not dispositive, in determining whether claims under Title VII and the ADEA survive a motion to dismiss. *Lowman v. Maryland Aviation Administration*, No. CV JKB-18-1146, 2019 WL 133267, at *5 (D. Md. Jan. 8, 2019).

### 1. Exhaustion and Scope of the Complaint

Before bringing a claim in federal court under Title VII or the ADEA, a plaintiff must first file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(e)(1), (f)(1); 29 U.S.C.A. § 626(d) (ADEA); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("Before a Title VII plaintiff can bring a formal suit, [s]he must file an administrative charge with the Equal Employment Opportunity Commission (EEOC)."). "[T]he scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (internal citation and quotation marks omitted). A plaintiff's claim fails if her "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit." *Chacko*, 429 F.3d at 506. But a complaint may contain claims "reasonably related" to the EEOC charge or claims that would naturally "follow from a reasonable administrative investigation." *Sydnor*, 681 F.3d at 594. This exhaustion

10

requirement ensures notice to the employer of a discrimination claim and gives the EEOC the first opportunity to resolve employment discrimination disputes. *Id.* at 593.

As part of the exhaustion requirement, Title VII and the ADEA have strict filing requirements. A Title VII or ADEA plaintiff must file a charge with the EEOC either 180 days or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5(e)(1); 29 U.S.C.A. § 626(d). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). "A claim is time barred if it is not filed within these time limits." *Id.* And "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112.

In this case, the parties agree that only discriminatory acts that occurred between January 11, 2018, and July 10, 2018, are actionable. Def.'s Mem. at 7 ("Plaintiff filed her charge of discrimination on July 10, 2018. Accordingly, any allegations occurring before January 11, 2018 are time-barred."); Pl.'s Resp. at 6 ("However, it is the Plaintiff's contentions that only those incidents that occurred after January 11, 2018, should be considered for purposes of liability under Title VII and the ADEA."). Ms. Gilliam filed her charge of discrimination with the EEOC on July 10, 2018. Compl. at 30–31; *see also* Def.'s Mot. to Dismiss at Exhibit 1. Because "in 'the overwhelming number of cases, it is accurate to describe North Carolina as a non-deferral state with a 180-day filing period,'" subject to two narrow exceptions not applicable here, the court agrees with the parties that any of Ms. Gilliam's alleged discriminatory acts occurring before January 11, 2018, are not actionable. *See Ortiz v. Vance Cty. Sch., Admin. Unit*, No. 5:18-CV-91-

11

D, 2019 WL 1940596, at *4 (E.D.N.C. Apr. 30, 2019) (quoting *Bratcher v. Pharmaceutical Product Development, Inc.*, 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008)). Thus, the reduction-in-force that cost Ms. Gilliam her administrative position, her subsequent appeal of that termination in the spring and summer 2017, her July 10, 2017 letter requesting a human resources position, and the hiring of Glen Buck for that position on July 24, 2018, are outside the applicable timeframe and, therefore, are not actionable "unlawful employment practice[s]" in this lawsuit.

### 2.    *Failure to State a Claim under Title VII and the ADEA*

Ms. Gilliam alleges unlawful discrimination and retaliation under Title VII and the ADEA. Title VII prohibits employers from discriminating against employees and applicants for employment based on race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a), and the ADEA prohibits the same based on age, 29 U.S.C. § 623(a). Both statutes prohibit employer retaliation. 42 U.S.C. § 2000e-3(a) (It is "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."); 29 U.S.C. § 623(a) (same for age).

#### a.  **Ms. Gilliam has plausibly stated a claim of race, color, sex, and age discrimination.**

At this stage, Ms. Gilliam needs only to allege a plausible claim that an adverse employment action taken against her was caused by unlawful discrimination. She must "allege facts to satisfy the elements of a cause of action created by" Title VII and the ADEA; in other words, she must only allege an inference that the Board "fail[ed] or refus[ed] to hire" her "*because of* [her] race . . . [her] sex*," or her age. *See McCleary-Evans*, 780 F.3d at 585. Given Ms. Gilliam

12

does not allege any direct evidence of discrimination, the core of this dispute is whether she has alleged sufficient facts to show a plausible inference of discrimination.

Although her complaint need not allege a prima facie case to survive a motion to dismiss, the prima facie factors are helpful guides. Absent direct evidence of discrimination, the elements of a prima facie case of employment discrimination are: (1) membership in a protected class; (2) satisfactory job performance or application for an open position for which the applicant was qualified; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012). These four elements are also required to state a claim for age discrimination under the ADEA. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006).

Ms. Gilliam has attempted to state a claim by alleging the prima facie elements for each of her discrimination claims. First, as a 47-year-old black female, she is within protected race, color, sex, and age classes. *Id.* at ¶¶ 7, 34, 41. Second, Ms. Gilliam alleges she "was meeting her employer's expectations at the time of adverse action, as she was not separated due to performance issues." *Id.* at ¶ 36. She also alleges that she was qualified for an administrative position, having ten years of administrative experience and sixteen years of teaching experience. *Id.* at ¶ 7. Third, Ms. Gilliam suffered adverse employment actions when she was denied a promotion back into administration after positions became available. *Id.* at ¶¶ 23–28, 35.[3] Fourth, she alleges similarly

---

[3] Although Ms. Gilliam alleges the reduction in force is an adverse action, it is not an actionable adverse employment action in this suit because it occurred outside the timeframe for claims arising under Title VII and the ADEA. 42 U.S.C.A. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred."); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

13

situated persons outside her protected class were treated differently. On race, color, sex, and age, the Complaint reflects Danny Perry, a younger white male, was hired as a Student Services/Safety Administrator, which is a retitled version of the position Ms. Gilliam lost during the reduction in force. *Id.* at ¶¶ 28, 43. Moreover, Ms. Gilliam alleges that Mr. Perry had fewer years of experience and was hired from another district, in contrast to Ms. Gilliam, who would have been an internal hire. *Id.* ¶ 50. Ms. Gilliam also identifies a biracial, older woman, Linda Bullock, who was hired as Director of Curriculum and Instruction, and a younger, white woman, Stephanie Horton, who was hired as a grade 6–12 Curriculum Director. *Id.* at ¶¶ 23, 24, 38.[4]

The Board argues that Ms. Gilliam's allegations fail to state claims for relief for several reasons. First, it argues many of her claims relate to allegedly discriminatory acts that fall outside the statutory timeframe, including the elimination of her student services position, her letter of interest for a human resources position, the hiring of Danny Perry, and the hiring of Glen Buck. Def.'s Mem. at 7–8. All of the Board's arguments on this front are well taken, except for the allegation related to Danny Perry. It is true that Mr. Perry's hiring date is not alleged in the Complaint. But reading the Complaint in the light most favorable to Plaintiff, this court will

_____

timely filed charges."); *id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").

[4] Ms. Gilliam also argues that she expressed interest in a Human Resources position by letter dated July 10, 2017, but she was not interviewed for that position, nor did she receive it; instead, Glen Buck, a white man, was hired for that position on July 24, 2018. Compl. at ¶¶ 20, 29; Pl.'s Resp. at Exhibit 2. But the letter is outside the 180-day timeframe for discriminatory acts that can be considered within Ms. Gilliam's July 10, 2018 EEOC charge of discrimination. Moreover, Glen Buck was recommended for hiring on July 24, 2018, which is 14 days after Ms. Gilliam filed her charge, so she has not exhausted administrative remedies for this alleged discriminatory act. Compl. at ¶¶ 29–30; Pl.'s Resp. at Exhibit 2. Therefore, these facts are irrelevant here for Ms. Gilliam's claims under Title VII and the ADEA.

assume that Mr. Perry's hiring occurred within the 180-day timeframe.[5] *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

Second, as to the administrative positions Ms. Gilliam alleges she was denied, the Board argues that Ms. Gilliam "fails to allege that she applied for . . . these positions." Def.'s Mem. at 8. At this stage, the Board's argument does not undermine the inference of discrimination raised by Ms. Gilliam's Complaint. Ms. Gilliam alleges she expressed interest in administrative positions as well as her dissatisfaction with being removed to a teacher position and "was not provided opportunities to return to the administrative office in 2018" while people outside the district were brought in to fill administrative roles. Compl. at ¶¶ 14–20, 37–38, 43–44, 54, Exhibits 3–6. In addition, Ms. Gilliam argues she could not apply for the administrative positions because they were never opened for applications. Pl.'s Resp. at 8.[6] Although one factor of the prima facie case requires a plaintiff to show she applied for a position for which she was qualified and was then

---

[5] Of course, if the hiring of Danny Perry occurred outside the 180-day actionable time limit, the parties can apprise the court of that fact in a future filing. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 109 ("A claim is time barred if it is not filed within these time limits.").

[6] The court notes this fact was not alleged in the Complaint. *See* Def.'s Reply Br. In Supp. of Mot. to Dismiss Compl. at 2–4. But Ms. Gilliam alleged in her Complaint that she expressed interest in returning to an administrative position and was denied the opportunity. Her EEOC charge also alleges that she "continued to still apply for other administrative positions that later became available [but] I have still yet been called in for an interview or considered for the positions." Def.'s Mot. to Dismiss at Exhibit 1; *see also Muir v. Winston-Salem State Univ.*, 1:11-CV-282, 2012 WL 683359, at *3 (M.D.N.C. Mar. 2, 2012) (explaining a court may consider documents outside the pleadings on a Rule 12(b)(6) motion when "the document is integral to and relied upon in the complaint," which includes "EEOC charges attached to motions to dismiss, where plaintiffs relied upon those documents in their complaints and did not contest the exhibits' authenticity."). Taking the allegations in the light most favorable to plaintiff, Ms. Gilliam has sufficiently alleged that she was passed over on these administrative positions, especially if there was no application process for her to enter.

denied despite her qualifications, *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, an employer cannot avoid liability for discrimination by never opening an application process to the employee and hiring someone else through alternative channels. Finally, the court recognizes that the prima facie factors are helpful but not dispositive at the 12(b)(6) stage and, for the reasons that follow, Ms. Gilliam has raised a plausible inference of discrimination with respect to race, color, and age based on the Board's hiring of Danny Perry to fill her former position.

Most important to this court's analysis is factor four of the prima facie case, whether Ms. Gilliam was treated differently than similarly situated employees outside her protected classes. Ms. Gilliam argues that the Board "on four occasions during the 2017–2018 academic year brought outside hires into administrative positions over Plaintiff's expressed interest in returning to an administrator role." Pl.'s Resp. at 8; *see also* Compl. at ¶¶ 19–20, 23, 24, 28, 29. Although the hire of Glen Buck is outside the applicable timeframe,[7] three other hires may be considered as potentially actionable discriminatory acts.

Ms. Gilliam's discrimination claims rise from merely possible to plausible with respect to race, color, sex, and age. She alleges a younger white male, Danny Perry, was hired into her former position, and she alleges she had more years of experience than him. *See McCleary-Evans*, 780 F.3d at 586 (finding an allegation that the person hired over plaintiff was "less experienced

---

[7] Joseph Glen Buck's July 24, 2018 hiring date was not alleged in the Complaint but was attached as an exhibit to Ms. Gilliam's Response Brief. Pl.'s Resp. at Exhibit 2. Although ordinarily this court cannot consider evidence outside the complaint, it can do so when "the document is integral to and relied upon in the complaint, and its authenticity is not challenged." *See Muir*, 2012 WL 683359, at *3. Ms. Gilliam relied on the hiring of Mr. Buck in her complaint and the attached exhibit confirms her allegation that Mr. Buck was hired as Executive Director of Operations and HR. Nor does the Board contest this document's authenticity. Moreover, the "underlying concern" of Rule 12(b)(6)'s rule against outside documents, which is to protect a plaintiff from unexpected "facts newly introduced by the defendant," does not exist here, given this evidence was introduced by Plaintiff. *Cf. Id.*

and less qualified" than plaintiff "is precisely the kind of allegation" that survives 12(b)(6)); *see also Lowman*, 2019 WL 133267, at *5 ("It follows that, where a plaintiff alleges that she was the better qualified candidate for a promotion and yet was denied it, circumstances giving rise to an inference of discrimination exist.") (citing *Obi v. Anne Arundel Cnty.*, 142 F. Supp. 2d 655, 662 (D. Md. 2001)). Importantly, Ms. Gilliam does not allege she is more experienced than the two women hired for other administrative positions. Without more, allegations reflecting that a qualified individual simply applies for a position and a person of another race or gender receives that position are insufficient to state a claim. *See Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) ("In support of her refusal-to-promote claim, Ali alleges that she applied for the position of structural engineer, that she was qualified for the position, and that someone of a different race was selected for the position. Standing alone, however, those factual allegations are insufficient to support a plausible race-discrimination claim.").

In addition, Ms. Gilliam's discrimination claims are stronger with respect to Mr. Perry because he was hired for a retitled version of her previous position. In *Bakasha v. ABB, Inc.*, the court found a plausible claim of discrimination when a male born in India of South Asian ethnicity applied for a position he had previously held and "was clearly qualified for the position, based on his extensive education, job history and qualifications, which included *previous work experience in the exact job in question.*" *Baksha v. ABB, Inc.*, No. 5:18-CV-4-FL, 2018 WL 6492949, at *1 (E.D.N.C. Dec. 10, 2018) (emphasis added). The court found an inference of discrimination when the position was filled by a person outside the protected class, and the "plaintiff was told that his position, which he ultimately reapplied for, was being eliminated by defendant." *Id.* Ms. Gilliam alleges similar facts: qualifications based on years of experience, previous experience in the sought-for position, being reduced in force from that position, objecting to the elimination of her

position, seeking to be rehired for an administrative position, and having her former position filled by someone outside her protected class. The court finds this is sufficient to raise a plausible inference of discrimination at this pleading stage.

In sum, Ms. Gilliam's Complaint states plausible claims of discrimination with respect to race, color, sex, and age. She is in those protected classes and alleges satisfactory job performance, that she sought administrative positions, and that the very position she was removed from was then filled by a younger white male with less experience than her.

### b. Ms. Gilliam has failed to allege facts that raise a plausible inference of retaliation; therefore, her retaliation claim must be dismissed.

To state a claim for unlawful retaliation, the elements of a prima facie claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190. The same factors apply for a retaliation claim under the ADEA. *Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 527 (E.D. Va. 2013), *aff'd*, 603 F. App'x 173 (4th Cir. 2015). Again, although a plaintiff need not prove a prima facie case at the 12(b)(6) stage, the plaintiff must allege facts sufficient to state all the elements of her claim and, thus, the prima facie factors are a helpful guide. *Lowman* 2019 WL 133267, at *5; *see also Parker v. Ciena Corp.*, 787 F. App'x 817, 820 (4th Cir. 2019).

Ms. Gilliam has attempted to plead facts for each of the three elements of a prima facie retaliation claim. First, she alleges she "engaged in protected activity when she provided a letter to Kim Cooper on August 28, 2017, regarding her issues with her potential separation. [And she] continued to engage in protected activity throughout her appeal process related to the RIF plan." Compl. at ¶ 54. Second, she claims the Board took adverse action against Ms. Gilliam when she was not offered any administrative positions and those positions were instead offered to out-of-district employees. Ms. Gilliam also alleges she was subjected to adverse action when she was

18

required to work more hours than other teachers over the 2018 summer. Compl. at ¶ 55. Further, she alleges that other employees who were removed based on the RIF were reinstated, but she was not. Compl. at ¶ 61. Third, Ms. Gilliam asserts a causal connection between the protected activity and adverse actions because those actions "immediately followed Plaintiff's appeal of her proposed separation." Compl. at ¶ 56.

In its motion to dismiss, the Board argues that Ms. Gilliam has not plausibly alleged any of these three factors. First, the Board argues that because Ms. Gilliam alleged only that her letter to Kim Cooper was regarding "her issues" with the separation, without specific allegations that "her issues" meant unlawful discrimination, she has not alleged that she engaged in protected activity. Def.'s Mem. at 9–10. Second, the Board again argues that because Ms. Gilliam did not include an allegation that she applied for any administrative positions, the decisions not to hire her for those positions do not constitute adverse actions. *Id.* at 10. As to causation, the Board merely argues her allegation is conclusory.

Ms. Gilliam has not stated a retaliation claim. First, Ms. Gilliam produces bare allegations that she complained of alleged unlawful conduct. Ms. Gilliam "does not have to prove that [she] was complaining of conduct that was actually violative of Title VII; rather, [she] must only show that [she] reasonably believed that the complained of conduct was unlawful," *Nathan v. Takeda Pharms. Am., Inc.*, 890 F. Supp. 2d 629, 644 (E.D. Va. 2012), *aff'd*, 544 F. App'x 192 (4th Cir. 2013) (citing *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2012)). However, she still must show that she did engage in protected activity. Protected activity may be stated in two ways: opposition and participation. *Brown v. Goodwill Indus. of E. N. Carolina, Inc.*, 361 F. Supp. 3d 558, 562 (E.D.N.C. 2019). For Ms. Gilliam to sufficiently allege she engaged in protected activity, she must show that she (1) opposed a "practice made an unlawful employment

19

practice" by Title VII or the ADEA, or (2) that "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII or the ADEA she suffered an adverse action. 42 U.S.C. § 20000e-3(a); 29 U.S.C. § 623(a), (d); *see also DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) ("[T]he oppositional activity [engaged in by the complainant] must be directed to 'an unlawful employment practice' under Title VII").

Ms. Gilliam's Complaint does not allege that she complained of unlawful discrimination before filing her charge. Her only allegation related to engaging in protected activity concerns an August 28, 2017 letter to an unidentified Kim Cooper regarding "her issues" with her separation. Compl. at ¶ 54. Although she alleges that she protested her separation, she does not allege that she did so based on any unlawful discrimination. Further, in the letters to the Board (attached to the Complaint as exhibits) she does not protest her reduction in force on the grounds of unlawful discrimination. In sum, although Ms. Gilliam protested the loss of her administrative position and placement in a social studies teacher position, there is no indication that she did so by protesting any employment practices made unlawful under Title VII or the ADEA. Instead, she objected on the grounds that she was qualified for an administrative position and, therefore, should not be in a teacher position. Such an objection is insufficient. *See Parker*, 787 F. App'x at 820 ("However, Parker only alleged that he complained about general workplace grievances regarding a lack of resources and Gorman's rude treatment of him; *he did not allege that he made a complaint of discrimination*, nor do his allegations lead to the inference that the Appellees would have understood his complaint to be about unlawful employment practices. Such a complaint does not amount to protected activity.") (emphasis added).

20

On the third factor, Ms. Gilliam fails to plausibly allege causation. Ms. Gilliam alleges that the Board's first failure to hire her for an administrative position directly followed her August 28, 2017 letter to Kim Cooper and appeal of her reduction in force. But the first alleged failure to hire occurred on February 13, 2018, almost *six months* after the Cooper letter. To support causation, Ms. Gilliam relies solely on "temporal proximity," arguing that "the adverse actions immediately followed Plaintiff's appeal of her proposed separation," Compl. at ¶ 56. But "[m]ere temporal proximity" is usually insufficient to show causation unless the adverse employment decision follows the protected activity "very close[ly]." *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 837–38 (E.D. Va. 2016) (quoting *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012)). The Supreme Court and Fourth Circuit have held that a three- or four-month gap is too long to satisfy the causation requirement, and even a ten-week span strains the causation element. *Id.* Here, more than five months transpired between the alleged protected activity and adverse action, a span too great from which to infer causation. Thus "[w]here the time between the events is too great to establish causation based solely on temporal proximity, a plaintiff must present 'other relevant evidence . . . to establish causation,' such as 'continuing retaliatory conduct and animus' in the intervening period." *Id.* at 838 (internal citations and quotation marks omitted). Ms. Gilliam alleged nothing but temporal proximity, and the adverse employment action followed too far behind her alleged protected activity; thus, she has failed to plausibly allege the causation requirement.

     3.    *Failure to State a Claim under Section 126-7.1 of North Carolina's State Human Resources Act.*

Finally, Ms. Gilliam argues she was denied "priority consideration" under N.C.G.S. § 126-7.1(f) but Ms. Gilliam is mistaken. Section 126-7.1(f) states:

21

If a State employee who has been separated due to reduction in force or who has been given notice of imminent separation due to reduction in force: (1) Applies for another position of State employment equal to or lower in salary grade than the position held by the employee at the time of notification or separation; and (2) Has substantially equal qualifications as any other applicant; then within all State agencies, the State employee who has been notified of or separated due to a reduction in force shall receive priority consideration over all other applicants.

N.C.G.S. § 126-7.1(f). But this provision, and the State Human Resources Act generally, does not apply to employees of local boards of education. *Id.* at § 126-5(c2)(1) ("The provisions of this Chapter shall not apply to . . . [p]ublic school superintendents, principals, teachers, and other public school employees."). As a result, Ms. Gilliam's state law claim is dismissed.

## IV. Conclusion

The court concludes that Plaintiff fails to state plausible retaliation and state law claims. At the same time, Plaintiff successfully states race/color, sex, and age discrimination claims. Therefore, Defendants' motion is GRANTED in part and DENIED in part, and the stay imposed on March 18, 2021, is LIFTED.

SO ORDERED this _30th_ day of September, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

22